# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| GINA BICKNELL, | Civil No. 07-3529 (JRT/RLE) |
| Plaintiff, | |
| | **MEMORANDUM OPINION** |
| v. | **AND ORDER** |
| DAKOTA GM, INC. d/b/a GREEN MILL, | |
| Defendant. | |

Philip L. Sieff, Craig O. Sieverding, and Patricia Yoedicke, **ROBINS KAPLAN MILLER & CIRESI**, 800 LaSalle Avenue, Suite 2800, Minneapolis, MN 55402, for plaintiff.

George C. Hottinger and Nicholas H. Jakobe, **ERSTAD & REIMER, P.A.**, 8009 34th Avenue South, Suite 200, Minneapolis, MN 55425, for defendant.

This case is before the Court on defendant Dakota GM, Inc., d/b/a Green Mill's ("Green Mill") and plaintiff Gina Bicknell's ("plaintiff") motions for summary judgment. Green Mill seeks summary judgment, arguing that plaintiff is unable to show Green Mill violated the Minnesota Civil Damages Act, Minn. Stat. § 340A.801, and, in the alternative, that plaintiff is not entitled to recover her husband's medical or nursing expenses. Plaintiff moves for partial summary judgment that she was not contributorily negligent and seeks a ruling on the treatment of collateral sources for the purpose of determining damages. For the reasons discussed below, the parties' motions are granted in part and denied in part.

## BACKGROUND

On Friday, August 5, 2005, plaintiff and her husband, Charles "Chaz" Bicknell ("Mr. Bicknell"), traveled to Ruttgers Birchmont Lodge ("Ruttgers Lodge") on Lake Bemidji, Minnesota, to attend a wedding later that day. (Pl.'s Dep., Docket No. 27, Ex. A at 89-91.) The following day, August 6, plaintiff, Mr. Bicknell, and several others attended dinner between approximately 5:30 P.M. and 7:30 P.M at Tutto Bene, an Italian restaurant. (*Id.* at 107.) At dinner, Mr. Bicknell consumed two glasses of wine and later, while relaxing by the Ruttgers Lodge pool, Mr. Bicknell consumed one or two gin and tonics. (*Id.* at 109-10.) Mr. Bicknell then proceeded to a bar at Ruttgers Lounge with the group with whom he had spent the day. Between approximately 9:00 P.M. and 12:00 A.M., Mr. Bicknell continued to drink alcoholic beverages. (*Id.* at 112, Ex. K at 7.) Members of the group described Mr. Bicknell's behavior at the bar as "animated," "outgoing," "very loud," and "intoxicated." (Austad Dep., Docket No. 49, Ex. 5 at 85; Pl.'s Dep., Docket No. 49, Ex. 1 at 125.)

At or around midnight, the Bicknell group, which comprised more than ten individuals, traveled by boat from Ruttgers Lodge to Green Mill, arriving at about 12:30 A.M. (Pl.'s Dep., Docket No. 27, Ex. K.) At Green Mill, the group continued to consume alcohol. Green Mill records indicate that from midnight until close on the morning of August 7, Green Mill sold a total of forty-four drinks to all customers. (Docket No. 50, Ex. 22.) Plaintiff contends that from 12:30 A.M. onward, "the Bicknell group were virtually the only patrons in the bar," but it remains uncertain what portion of

the drinks consumed after midnight were consumed by the Bicknell group.  (Pl.'s Opp'n Mem., Docket No. 46 at 14.)  A credit card slip indicates that Mr. Bicknell paid for "2 Glennfiddich, 6 Jameson" drinks at 12:36 A.M. at Green Mill, but it also remains unclear which of those drinks, if any, Mr. Bicknell consumed.  (Docket No. 27, Ex. J.)

At approximately 1:30 A.M., the group departed Green Mill by boat to return to Ruttgers Lodge.  (*Id.*, Ex. K at 8.)  As the boat approached the Ruttgers Lodge dock, two individuals from the group, Courtney McKercher and Chris Clayton, jumped off the boat into the water.  (Clayton Dep., Docket No. 49, Ex. 10 at 72.)  As the boat neared the dock, Mr. Bicknell also decided to jump off the boat, diving head-first into the water.  (Pl.'s Dep., Docket No. 27, Ex. A at 172-73.)  The water proved too shallow, however, and Mr. Bicknell fractured his spine after his head collided with the lake bottom.  As a result of that injury, Mr. Bicknell has been rendered quadriplegic.  Green Mill maintains that throughout the course of these events, plaintiff failed to act appropriately to prevent Mr. Bicknell's injury.  (Def.'s Opp'n Mem., Docket No. 62 at 3-5.)

Plaintiff brought this action, alleging that Green Mill is liable for Mr. Bicknell's injuries under the Minnesota Civil Damages Act ("CDA"), Minn. Stat. § 340A.801, because it illegally sold alcohol to Mr. Bicknell.  Green Mill now moves for summary judgment, arguing that plaintiff has failed to produce evidence that Mr. Bicknell was obviously intoxicated when Green Mill sold him alcohol and that Green Mill illegally sold alcohol by acting unreasonably and permitting Mr. Bicknell to consume alcohol off-premises.  Green Mill argues in the alternative that it is entitled to summary judgment

that plaintiff may not recover damages under the CDA as they relate to Mr. Bicknell's medical and nursing expenses.

Plaintiff moves for partial summary judgment, arguing that as a matter of law, plaintiff is not contributorily negligent for Mr. Bicknell's injuries. Plaintiff further seeks a ruling that evidence of health and disability insurance proceeds paid to Mr. Bicknell should not be considered in determining plaintiff's damages.

## DISCUSSION

### I.   STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

II.      **GREEN MILL'S MOTION FOR SUMMARY JUDGMENT**

A.      **Illegal Sale of Alcohol to an Obviously Intoxicated Person**

Under the Minnesota CDA,

> [a] spouse . . . injured in person, property, or means of support, or who incurs other pecuniary loss by an intoxicated person or by the intoxication of another person, has a right of action in the person's own name for all damages sustained against a person who caused the intoxication of that person by illegally selling alcoholic beverages.

Minn. Stat. § 340A.801, subd. 1.

The sale of alcohol to an obviously intoxicated person is an illegal sale of alcohol under the CDA.  Minn. Stat. § 340A.502; *Strand v. Village of Watson*, 72 N.W.2d 609, 614-16 (Minn. 1955).  In order for a seller to be liable under such a claim, "there must be such outward manifestation of intoxication that a person using his reasonable powers of observation can see or should see that such person has become intoxicated."  *Strand*, 72 N.W.2d at 615.  Further,

> [a] finding of intoxication does not require proof of any specified amount of drinking or any degree of intoxication, but simply proof that, as a result of drinking intoxicants, a person has lost control to any extent of his mental or physical faculties and that such condition is, or should be, observable or apparent to the seller.

*Murphy v. Hennen*, 119 N.W.2d 489, 493 (Minn. 1965).  Such outward manifestations of intoxication may include a person's loss of reason or faculty, incoherent speech, or loss of control of bodily motions or actions.  *Strand*, 72 N.W.2d at 614-16.

Green Mill argues that witness testimony demonstrates that Mr. Bicknell was not manifesting obvious signs of intoxication at the time Green Mill sold him alcohol.  Green Mill claims that those witnesses, who were present with Mr. Bicknell at the Ruttgers

Lodge bar and Green Mill, testified that Mr. Bicknell was in control of his body motions, was not overly friendly, and generally was not manifesting outward signs of intoxication while at Green Mill.  (Def.'s Supp. Mem., Docket No. 24 at 9-15.)

Further, Green Mill contends that only plaintiff and Paul Smith, who were part of the Bicknell group at Green Mill, testified that Mr. Bicknell appeared obviously intoxicated.  Smith testified, however, that he did not notice that Mr. Bicknell was exhibiting signs of intoxication until immediately **after** the group left Green Mill and prepared to board the boat for the return trip to Ruttgers Lodge.  (Smith Dep., Docket No. 27, Ex. E at 57-58.)  Green Mill concedes that plaintiff testified that Mr. Bicknell was obviously intoxicated at Green Mill, but argues that plaintiff makes only conclusory statements about Mr. Bicknell's behavior, without citing any specific instances of observable signs of intoxication.  (Def.'s Supp. Mem., Docket No. 24 at 16-17.)  Green Mill, however, fails to demonstrate that based on witness testimony, there is no genuine dispute of fact that Mr. Bicknell was obviously intoxicated at the time Green Mill sold him alcohol.

Minnesota courts have concluded that circumstantial evidence, in the absence of or in addition to direct evidence, is admissible to establish obvious intoxication.  *See e.g.*, *Larson v. Carchedi*, 419 N.W.2d 132, 134 (Minn. App. 1988) ("Direct evidence is not essential, and intoxication sufficient to constitute a violation may be established by circumstantial evidence which reasonably supports a jury verdict on the ultimate question.").  Notably, Minnesota courts have found that an allegedly intoxicated person's

("AIP") appearance and behavior before and after leaving an establishment may raise a fact question of intoxication for a jury. *Carchedi*, 419 N.W.2d at 135-36.

The Minnesota Supreme Court has also previously held that being loud or boisterous are among the "usual characteristics of an intoxicated person." *Strand*, 72 N.W.2d at 612. Here, Smith testifies that while at Green Mill, Mr. Bicknell was "boisterous," "louder," and "overly friendly." (Smith Dep., Docket No. 49, Ex. 7 at 99.) Moreover, Smith testified that when Mr. Bicknell left Green Mill "he was yelling around outside," and had to be told "to be quiet." (*Id.* at 103-04.) Plaintiff's testimony could further support a finding that Mr. Bicknell was obviously intoxicated at Green Mill: plaintiff testified that Mr. Bicknell "was very loud, extremely friendly, draping his arms around people. He always had a drink, and . . . [h]is eyes were also bleary." (Pl.'s Dep., Docket No. 49, Ex. 1 at 154-55.)

Although the number of witnesses (eight) testifying that they could not recollect if Mr. Bicknell was outwardly manifesting signs of intoxication at Green Mill outnumber the witnesses (two) that testify that Mr. Bicknell was exhibiting signs of obvious intoxication around the time of the alleged illegal sale, that is insufficient by itself to demonstrate that there is no triable issue of fact. Plaintiff has presented sufficient evidence from witness testimony to survive a motion for summary judgment. Accordingly, Green Mill's motion is denied to the extent that it seeks summary judgment on plaintiff's allegation of a sale to an obviously intoxicated person.

Green Mill also seeks to exclude from consideration plaintiff's expert report from Lowell Van Berkom and affidavit from Donald Marose. Van Berkom, a toxicologist,

opines that Mr. Bicknell was likely obviously intoxicated at Green Mill and relates Mr. Bicknell's estimated blood alcohol content to the likelihood that Mr. Bicknell would have displayed outward signs of intoxication while at Green Mill.  Marose, a Minnesota State Patrol officer, draws on his twenty years of experience with the Minnesota State Patrol to state "with a reasonable degree of certainty" that Mr. Bicknell would likely show visible signs and symptoms of intoxication while at Green Mill.  (Marose Aff., Docket No. 47.)  Given the Court's conclusions regarding disputes of fact in witness testimony, it is unnecessary to determine the admissibility of this evidence at this stage, and these admissibility issues may be addressed more fully at trial if still disputed.[1]

### B.      Illegal Sale of Alcohol Based on Off-Premises Consumption

Plaintiff also alleges that Green Mill made an illegal sale to Mr. Bicknell based on Mr. Bicknell's off-premises consumption of  alcohol sold by Green Mill.  The sale of alcohol in an open container by an on-sale vendor without safeguarding against off-premises consumption is an illegal sale under the CDA.  *Englund v. MN CA Partners/MN Joint Ventures*, 555 N.W.2d 328, 331-32 (Minn. App. 1996).  "[That] is not to say that an on-sale liquor vendor is liable every time a customer evades the vendor's safeguards and smuggles liquor off-premises."  *Id.* at 332.  Rather, a vendor will only be liable if it is

---

[1] Green Mill also opposes plaintiff's submission of photographs of Mr. Bicknell and the Bicknell group to establish that Bicknell was obviously intoxicated while at Green Mill. Although it is questionable whether photographs that do not include Mr. Bicknell are relevant to the ultimate question here, it is clear from witness testimony that facts about Mr. Bicknell's obvious intoxication remain disputed.  Thus at this stage of the litigation, the Court need not determine which, if any photographs, are admissible to a jury.

established that the vendor did not "operate as a reasonable vendor, acting in good faith to sell liquor to be consumed only on the licensed premises." *Id.*

Plaintiff has not produced evidence sufficient to persuade a reasonable juror that Green Mill failed to operate as a reasonable vendor, acting in good faith to sell alcohol to Mr. Bicknell for consumption only on licensed premises.  Although there is testimony that three individuals left Green Mill with alcohol, Green Mill is not liable merely because customers are able to smuggle alcohol from the premises.  Plaintiff points to evidence that Green Mill violated its policy requiring the removal of patrons' drinks promptly at closing time.  The sole evidence provided in support of this contention is a photograph that allegedly shows drinks on the restaurant table almost a half-hour after Green Mill's closing.  (Docket No. 50, Ex. 34.)  There is no indication on the photo or outside of plaintiff's assertion, however, that the photo was, indeed, taken after closing.  Moreover, even if the photo suggests that drinks were not cleared after closing, the Court is not persuaded that such evidence could lead a rational trier of fact to conclude that Green Mill acted unreasonably and in bad faith.

Plaintiff also claims that Green Mill acted unreasonably by serving multiple drinks at last call when Green Mill knew that the Bicknell group would be leaving shortly thereafter.  But only one individual in the group, James Austad, claimed that he was "provided" with a beer when he had not finished his previous drink.  (Austad Dep., Docket No. 49, Ex. 6 at 121.)  Austad stated, "I think I ordered the second beer because they said last call and I hadn't finished my first beer."  (*Id.*)  This evidence alone is

insufficient to establish that Green Mill illegally sold alcohol to Mr. Bicknell without safeguarding against off-premises consumption.

Accordingly, Green Mill's motion for summary judgment is granted as to the claim for illegal sale of alcohol based on off-premises consumption.

### C. Plaintiff's Recovery for Mr. Bicknell's Medical or Nursing Expenses

Green Mill further seeks a ruling that, as a matter of law, plaintiff may not recover damages resulting from medical or nursing costs related to Mr. Bicknell's care after his accident.  (Pl.'s Supp. Mem., Docket No. 24 at 29-32.)  Under the CDA,

> a spouse, child, parent, guardian, employer, or other person injured in person, property or means of support, or who incurs other pecuniary loss by an intoxicated person or by the intoxication of another person, has a right of action in the person's own name for all damages sustained against a person who caused the intoxication of that person by illegally selling alcoholic beverages.

Minn. Stat. § 340A.801, subd. 1.  One who voluntarily becomes intoxicated, however, may not recover for his own injuries under the CDA.  *Jones v. Fisher*, 309 N.W.2d 726, 728 (Minn. 1981).

Mr. Bicknell could not recover his own damages here because he was voluntarily intoxicated on the night in question.  *See Jones*, 309 N.W.2d at 728.  Plaintiff, however, argues that she can recover those expenses because they constitute property loss damages to her.  That is, plaintiff claims that she is jointly and severally liable as Mr. Bicknell's wife for Mr. Bicknell's medical and nursing expenses under state law.  Plaintiff further asserts that health care expenses that are not covered by insurance will be paid from the couple's joint funds.

Minnesota case law clearly contemplates that plaintiff may recover damages under the CDA.  Minn. Stat. § 340A.801, subd. 1 (spouse); *see also Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 857-58 (Minn. 1998) (holding that a fiancée to an AIP and the fiancée's daughter were entitled to exercise their right of action under the Act).  Case law, however, does not clearly resolve whether plaintiff may recover the **type** of damages sought here.  Both Green Mill and plaintiff cite *State Farm Mut. Auto. Ins. Co. v. Village of Isle*, 122 N.W.2d 36 (Minn. 1963), to support their positions on damages.  In *Village of Isle*, the Minnesota Supreme Court reviewed a plaintiff-wife's claim for loss of means of support as a result of injuries sustained by her husband in a car accident after the defendant illegally sold him alcohol.  *Id.* at 38.  Among the damages claimed by the plaintiff was the depletion of the couple's joint funds by the husband to pay for "hospital, medical, ambulance, and nursing expenses arising out of the accident."  *Id.*  A jury returned a verdict in the plaintiff's favor, and the defendant appealed the trial court's jury instruction, which described what constituted "means of support" for the purposes of damages.  *Id.* at 39.

The Supreme Court held that the plaintiff was entitled to recover for the loss of means of support, stating:

> There is nothing to indicate that any part of this award was based upon plaintiff's payment of the medical items described.  The trial court did not instruct the jury that such expenses were to be considered in computing such damages.  Normally, the husband's liability for such expenses incurred in his wife's behalf is regarded as an injury to property, but here no award for injury to property was made to plaintiff.  The medical expenses were paid from funds owned jointly by plaintiff and her husband which she could look to as a source of support and which were depleted to the extent of the payments described.  Accordingly, it might logically be said that the jury

could properly have considered them in determining a fair amount due plaintiff for her loss of support.  Under the circumstances described, we feel that the amount awarded plaintiff for loss of means of support should be sustained.

*Id.* at 40 (citations omitted).

It is difficult to reconcile the language in *Village of Isle* with either party's position.  It appears that *Village of Isle* approved of the jury's consideration of the husband's medical expenses in determining the plaintiff's damages for loss of means of support.  The Supreme Court, however, states that "[a]ny resulting need for future medical or nursing expenses therefor, as well as any requirement for his future care, must be regarded as injuries personal to him or to his property for which he, rather than plaintiff, would have a personal action."  *Id.* at 42.  This additional conclusion may reflect the law of property damages at the time *Village of Isle* was decided more than a damages analysis in a dram shop action:  plaintiffs argue that "in the 1960's . . . a wife did not even have a property damages claim for her **own** medical expenses, much less those of her husband."  (Pl.'s Opp'n Mem., Docket No. 46 at 42 (citing *Janke v. Janke*, 195 N.W.2d 185 (Minn. 1972) (emphasis original).)

Without sufficiently clear guidance from *Village of Isle*, the Court returns its focus to the language of the CDA.  Under the CDA, "a spouse . . . injured in person, property or means of support, or who incurs other pecuniary loss by an intoxicated person or by the intoxication of another person, has a right of action in the person's own name."  Minn. Stat. § 340A.801, subd. 1.  Here, plaintiff has asserted claims for damages to her property, means of support, and for pecuniary loss.  Although Mr. Bicknell could not

recover for his own medical expenses, plaintiff is now largely responsible for her husband's and her own livelihood.  Thus, the depletion of plaintiff and Mr. Bicknell's joint funds, to which plaintiff now must contribute in significantly greater proportions, could be considered plaintiff's property damages under the CDA.

The question of how speculative plaintiff's claims are or whether she may recover for expenses paid from "collateral sources" are questions that may be further reviewed, along with additional argument regarding the instant issue, in motions *in limine* if this case proceeds to trial.  Given the above analysis, the Court therefore denies without prejudice Green Mill's motion for summary judgment as to recovery of Mr. Bicknell's medical expenses.

## III.    PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff moves for partial summary judgment that she was not contributorily negligent and requests a ruling that disability and health insurance benefits provided to or on Mr. Bicknell's behalf cannot be deducted from plaintiff's requested damages.

### A.    Plaintiff's Comparative Fault

Any action brought under the CDA is governed by Minnesota's comparative negligence statute.  Minn. Stat. § 340A.801, subd. 3.  Thus, "any damages allowed [under the CDA] must be diminished in proportion to the amount of fault attributable to the person recovering." *Id.* § 604.01, subd. 1.  Fault includes "acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others . . . .  The term also includes . . . the defense of complicity under section 340A.801." *Id.*

subd. 1a.  "[E]xcept in those rare cases where there is no dispute in the evidence and the factfinder could come to only one conclusion, the apportionment of negligence should be left to a jury."  *Campion v. Knutson*, 239 N.W.2d 248 (Minn. 1976) (internal quotation marks omitted).

Green Mill contends that plaintiff was negligent because she failed to take steps to stop Mr. Bicknell from consuming additional drinks after becoming aware that he was intoxicated.  (Def.'s Opp'n Mem., Docket No. 62 at 4.)  Green Mill also notes that plaintiff failed to stop Mr. Bicknell from carrying a drink out of Green Mill and failed to act to prevent her husband from diving head-first into Lake Bemidji.  (*Id.* at 4-5.)

### 1.    Plaintiff's Legal Duty to Mr. Bicknell

Plaintiff claims that as a matter of law she cannot be found negligent because Minnesota law does not impose on her a legal duty to protect her husband.  (Pl.'s Supp. Mem., Docket No. 57 at 10.)  Under Minnesota law, the existence of a legal duty is a required element of a negligence claim.  *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn. 2001).  The existence of a legal duty is generally a question of law for the Court and if there is no legal duty, summary judgment must be granted.  *Id.* at 672, 676.

### a.    Duty Based on a "Special Relationship"

The Minnesota Supreme Court, which has adopted the Restatement (Second) of Torts, holds that "[a] person generally has no duty to act for the protection of another person, even if he realizes or should realize that action on his part is necessary."

*Donaldson v. Young Women's Christian Ass'n*, 539 N.W.2d 789, 792 (Minn. 1995). However, "[a] legal duty to act for the protection of another person arises when a special relationship exists between the parties." *Id.* (citing *Erickson v. Curtis Inv. Co.,* 447 N.W.2d 165,169 (Minn. 1989)); *see also* Restatement (Second) of Torts § 314A (1965). Minnesota case law has generally only found a duty to protect under this exception "on the part of common carriers, innkeepers, possessors of land who hold it open to the public, and persons who have custody of another person under circumstances in which that other person is deprived of normal opportunities of self-protection." *Donaldson*, 539 N.W.2d at 792.  "Typically, the plaintiff is in some respect particularly vulnerable and dependent on the defendant, who in turn holds considerable power over the plaintiff's welfare." *Id.* (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 56, at 374 (5th ed. 1984)).  Further, to properly find that there is a special relationship between parties, the harm to be prevented by defendant must be that type of harm that defendant is in a position to and should be expected to protect against.  *Erickson*, 447 N.W.2d at 168.

Green Mill argues that a spousal relationship is the type of "special relationship" that can give rise to a legal duty to act.  In support of this proposition, Green Mill cites *Lind v. Slowinski*, 450 N.W.2d 353, 356 (Minn. App. 1990) (citing *Regan v. Stromberg*, 285 N.W.2d 97, 99-100 (Minn. 1979)), which concluded that "[u]nder certain circumstances, . . . a duty [to protect] may . . . exist between husband and wife."  Green Mill argues that the Restatement (Second) of Torts further supports its position:

The duties stated in this Section arise out of special relations between the parties, which create a special responsibility, and take the case out of the general rule [that there is no duty to act].  The relations lists are not intended to be exclusive, and are not necessarily the only ones in which a duty of affirmative action for the aid or protection of another may be found. There may be other such relations, **as for example that of husband and wife,** where the duty is recognized by the criminal law, but there have as yet been no decisions allowing recovery in tort jurisdictions where negligence actions between husband and wife for personal injuries are permitted.

Restatement (Second) of Torts § 314 A, cmt. B (1965) (emphasis added).

A spousal relationship, however, is not a *per se* "special relationship" for the purpose of creating a legal duty.  *Lind* cites to *Regan v. Stromberg* for its conclusion that a duty may exist between a husband and wife, but *Regan* is not a special relationship case.  Rather, *Regan* examined the legal duty for someone who "took charge" of another who was under a disability.  *Regan*, 285 N.W.2d at 100.  Moreover, the purpose of the special relationship exception is to protect an individual who is "particularly vulnerable and dependent on the defendant, who in turn holds considerable power over the plaintiff's welfare."  *Donaldson*, 539 N.W.2d at 792.  Here, plaintiff and Mr. Bicknell's relationship is not a "special relationship" that creates a legal duty: a party is not dependent on his or her spouse for protection by virtue of any inherent vulnerability.

### b.    Duty Based on "Taking Charge" of Another

Green Mill argues that there is a second basis for establishing that plaintiff had a legal duty to act.  Under Minnesota law, an affirmative duty to protect another arises

[w]here one is in charge of another, or who being under no duty to do so takes charge of another, and who knows or in the exercise of reasonable care should know that the physical or mental condition of such person is

such that it is reasonably foreseeable that such person would be exposed to injury, then the person in charge must use reasonable care to prevent such exposure.

*Regan*, 285 N.W.2d at 100.

Plaintiff does not address the question of whether Mr. Bicknell was "under a disability" on the evening of August 6 and early morning of August 7.  (Pl.'s Supp. Mem., Docket No. 57 at 15.)  Plaintiff argues, however, that Green Mill has not presented any evidence that plaintiff took charge of Mr. Bicknell or the circumstances attendant to his accident.  (*Id.*)

The Eighth Circuit, addressing legal duties under Iowa law, held that to "take charge" requires "specific action to exercise control or custody" over the helpless individual.  *Freeman v. Busch*, 349 F.3d 582, 588-589 (8th Cir. 2003); *see also Depue v. Flateau*, 111 N.W. 1, 3 (1907) (stating that when taking charge of a disabled individual, there is an "obligation as a matter of law, not mere sentiment, at least to refrain from any affirmative action that might result in injury to [the disabled person]").  Green Mill asserts that the inquiry is whether a plaintiff took charge of the **circumstances** under their control.  (Def.'s Opp'n Mem., Docket No. 62 at 11.)  As a result, Green Mill contends that a question remains about whether plaintiff took control over the circumstances because she suggested that her husband should stop drinking, told him not to remove a drink from Green Mill, held his cigarette before he dove into Lake Bemidji, and maintained control over the couple's joint funds that were used by Mr. Bicknell to purchase alcohol.  (*Id.*)

Green Mill has failed to produce evidence showing that plaintiff took charge of Mr. Bicknell or the circumstances surrounding his accident. Although plaintiff suggested that Mr. Bicknell should stop drinking or should not remove his drink from Green Mill, it is the view of the Court that such action is not specific enough to suggest plaintiff was exercising control or custody over Mr. Bicknell. Indeed, it appears that plaintiff was decidedly removed from the circumstances of this case. Accordingly, the law did not impose on plaintiff a duty to act with respect to Mr. Bicknell.

### 2.      Complicity

Plaintiff also seeks summary judgment on Green Mill's anticipated assumption of risk and imputation claims. Green Mill does not respond to these contentions and, after reviewing plaintiff's arguments, the Court grants plaintiff's motion as to assumption of risk and imputation. Those issues have, however, evolved into allegations of complicity and arguments that plaintiff failed to avoid the injury or mitigate damages.

Complicity is merely an aspect of comparative fault. *K.R. v. Sanford*, 605 N.W.2d 387, 394 (Minn. 2000). Indeed, only an innocent third party is entitled to recover under the CDA. *Randall v. Village of Excelsior*, 103 N.W.2d 131, 133 (Minn. 1960). "The term 'innocent third party,' as used in [] case law interpreting the complicity doctrine under the [CDA], means a party not complicit in the specific illegal act." *Sanford*, 605 N.W.2d at 393. Although simply accompanying a person who has become intoxicated does not constitute complicity, *Hempstead v. Minneapolis Sheraton Corp.*, 166 N.W.2d 95, 99 (Minn. 1969), "one who has been an intentional accessory to the illegality" could

be found complicit. *Turk v. Long Branch Saloon, Inc.*, 159 N.W.2d 903, 906 (Minn. 1968).

Green Mill argues that plaintiff's "presence at the establishments with her husband, her alleged knowledge of his obvious intoxication, and her knowledge of drink purchases with her funds create a genuine issue of material fact as to her complicity in the alleged illegal sale." (Def. Opp. Mem., Docket No. 62 at 16.) The Minnesota Supreme Court has been clear, however, that it is the action of **providing** or selling the alcohol to the AIP that is relevant to the determination of complicity. *Sanford*, 605 N.W.2d at 393-94. Green Mill presents no evidence that plaintiff was complicit in the illegal sale of alcohol by providing the alcohol to Mr. Bicknell – for example, by purchasing the alcohol herself and then providing it to her husband – and mere knowledge of Mr. Bicknell's drinking is insufficient. *See Hempstead*, 166 N.W.2d at 99; *cf. Sanford*, 605 N.W.2d at 393-94 (examining previous case law and concluding that in one case, a "plaintiff was complicit because he continued to **provide** alcoholic beverages once he knew or should have known that his companion was obviously intoxicated"; and in another case, noting that the Supreme Court's decision "turned not on the fact that the plaintiff caused someone to become intoxicated, but on the illegality of **providing** a minor with alcohol" (emphasis added)). Thus, there is no triable fact question as to plaintiff's complicity in the illegal sales.[2]

---

[2] Green Mill also argues that there is a triable issue of fact regarding plaintiff's complicity in the illegal sale of alcohol based on off-premises consumption. The Court, however, grants Green Mill's motion for summary judgment on the issue of an illegal sale based

(Footnote continued on next page.)

### 3.     Duty to Avoid Injury and Mitigate Damages

The Minnesota comparative fault statute attributes fault to an individual for "unreasonable failure to avoid an injury or to mitigate damages."  Minn. Stat. § 604.01, subd. 1a.  Proof of such an unreasonable failure may be considered "in determining the damages to which the claimant is entitled."  *Id.*  Green Mill offers only conclusory argument, however, that plaintiff breached a duty to avoid injury and mitigate damages:

> [E]vidence indicates that Plaintiff unreasonably failed to avoid injury or mitigate damages to herself.  She says she knew her husband was intoxicated.  And since he is her husband, she had to know that injuries to him could cause damages to her.  A reasonable person would know that allowing one's "very intoxicated" husband to jump off a boat into a lake at nearly 2:00 a.m. could result in injury to him and in turn to oneself. . . .  Plaintiff could have asked her husband not to jump in.  She was sitting right next to him.  But she chose not to.

(Def.'s Opp'n Mem., Docket No. 62 at 21.)  This argument merely repeats Green Mill's comparative negligence arguments, which the Court has already found unpersuasive.

Given the above analysis, plaintiff's motion for summary judgment as to comparative negligence is granted.

### B.     Treatment of Collateral Sources

Plaintiff further seeks a ruling that her claim for damages should be submitted to a jury without mention of disability and health insurance benefits provided to Mr. Bicknell.

_____
(Footnote continued.)

on off-premises consumption, and the issue of plaintiff's complicity in that offense is therefore moot.

(Pl.'s Supp. Mem., Docket No. 57 at 26-28.)   Under Minnesota law, if the trier of fact determines that a party is liable for damages to a plaintiff in a tort action, "the court shall determine  . . . amounts of collateral sources that have been paid for the benefit of the plaintiff . . . as a result of the losses except those for which a subrogation right has been asserted."  Minn. Stat. § 548.251, subd. 2 (2008).  A "collateral source" is a "payment[] related to the injury or disability in question made to plaintiff, or on plaintiff's behalf up to the date of the verdict, by or pursuant to," *inter alia*, health insurance and accident insurance that provide health benefits or income disability coverage.  *Id.* § 548.251, subd. 1.  On determining the amounts of the collateral sources, the Court will reduce any jury award by such amounts.  Notably, "[t]he jury shall not be informed of the existence of collateral sources or any future benefits which may or may not be payable to the plaintiff."  Minn. Stat. § 548.251, subd. 5.

Plaintiff contends that Mr. Bicknell's disability benefits may not diminish plaintiff's recovery because the premiums were paid entirely by the Bicknells.  *See id.* § 548.251, subd. 1(4) (excluding from the definition of collateral sources "benefits received from a private disability insurance policy where the premiums were wholly paid for by the plaintiff.")  Plaintiff also argues that evidence of benefit payments by Mr. Bicknell's health insurance should not be presented to the jury or deducted from the verdict because the health insurance company has asserted a subrogation interest in those benefits.  Minn. Stat. § 548.251, subd. 2.

A collateral source is a payment related to an injury or disability to a **plaintiff**, and Mr. Bicknell, who is not the plaintiff in this action, was the person who received

-21-

payments from these sources.  Further, it appears that plaintiff seeks to submit to the jury's consideration the full measure of damages, notwithstanding the fact that an award of damages could therefore duplicate the recovery of benefits by Mr. Bicknell.  *See Do v. Am. Fam. Mut. Ins. Co.*, 752 N.W.2d 109, 114 (Minn. App. 2008) ("The statute 'prevents double recovery by requiring the deduction of certain benefits received by a civil plaintiff' and thus 'abrogates the common law right to be overcompensated for injuries.'" (quoting *Johnson v. Farmers Union Cent. Exch., Inc.,* 414 N.W.2d 425, 432 (Minn. App. 1987))).

Accordingly, the Court denies without prejudice plaintiff's request for a ruling that Mr. Bicknell's disability and health benefits constitute collateral sources that should not be presented to the jury or deducted from a verdict.  The Court will revisit this question in motions *in limine* if the case proceeds to trial and the issue is not yet resolved.

This case will be placed on the Court's next available trial calendar

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendant Dakota GM, Inc. d/b/a Green Mill's Motion for Summary Judgment [Docket No. 22] is **GRANTED in part** and **DENIED in part** as follows**:**

     a.      The motion is **GRANTED** as to plaintiff's claim of an illegal sale based on off-premises consumption of alcohol;

b.     The motion is **DENIED without prejudice** as to the inclusion of plaintiff's husband's medical and nursing expenses in plaintiff's requested damages; and

c.     The motion is **DENIED** in all other respects.

2.     Plaintiff Gina Bicknell's Motion for Partial Summary Judgment [Docket No. 55] is **GRANTED in part** and **DENIED in part** as follows**:**

a.     The motion is **GRANTED** as to Green Mill's assertion of theories for comparative negligence, assumption of risk, imputation, complicity, and duty to avoid or mitigate damages; and

b.     The motion is **DENIED** in all other respects.

DATED:  March 24, 2009
at Minneapolis, Minnesota.

s/ John M. Tunheim

JOHN R. TUNHEIM
United States District Judge